IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

B.A. Individually and as          :          CIVIL ACTION
parent and Natural Guardian of    :
A. E-A, a minor                   :
                                  :
        v.                        :          NO. 22-2026
                                  :
BOROUGH OF SHARON HILL, et al.    :

MEMORANDUM

Bartle, J.                                        March 25, 2026

        The court has before it the question whether to allow
the modification of a previously court-approved structured
settlement.

        Alona Ellison-Acosta, then a minor, was shot along
with others by police officers of the Borough of Sharon Hill
while attending a high school football game.  She was an
innocent bystander.  She required significant surgery at
Children's Hospital in Philadelphia and subsequent physical
therapy.

        B.A., Ms. Ellison-Acosta's mother, individually and on
behalf of Ms. Ellison-Acosta, brought this action against the
Borough and its police officers under 42 U.S.C. § 1983.
Following discovery, this action was settled.  The settlement
required court approval because at the time Ms. Ellison-Acosta
was seventeen years old.  See Local Civil Rule 41.2.  After two
hearings, the court entered an Order on December 17, 2023

approving the amount and distribution of the settlement which was in part structured.

Ms. Ellison-Acosta turned eighteen in the summer of 2024.  J.G. Wentworth Originations LLC ("Wentworth") has now filed a motion for consent and court approval to proceed with a partial transfer of a structured settlement pursuant to the Pennsylvania Structured Settlement Act, 40 P.S. §§ 4001-4009. The motion is predicated on the January 14, 2026 purchase contract between Wentworth and Ms. Ellison-Acosta.

I

In its December 14, 2023 Order, the court provided for the following distribution of the settlement after payment of counsel fees and costs, the Pennsylvania Department of Human Services' lien, and a payment to Ms. Ellison-Acosta's mother in her own right:

TO:   Pacific Life & Annuity Services, Inc.          $400,000.00
      to fund periodic payments to Minor Plaintiff
      as follows:

      $1,373.36 payable monthly, guaranteed for 17
      year(s), beginning on 08/07/2024, with the last
      guaranteed payment on 07/07/2041.

      $50,000.00 paid as a lump sum on 08/07/2026 guaranteed
      $50,000.00 paid as a lump sum on 08/07/2028 guaranteed
      $50,000.00 paid as a lump sum on 08/07/2031 guaranteed
      $100,000.00 paid as a lump sum on 08/07/2036 guaranteed
      $100,000.00 paid as a lump sum on 08/07/2041 guaranteed

TO:   The Pennsylvania 529 Plan directly FBO          $100,000.00
      Alona Ellison-Acosta

TO:   To an interest-bearing and federally insured     $144,437.96
      bank account in Delaware County, Pennsylvania, in the name

-2-

of Alona Ellison-Acosta, a minor. Said account shall be marked "not to be withdrawn, assigned, negotiated, or otherwise alienated until Alona Ellison-Acosta reaches her majority, to wit, on August 7, 2024, except upon Order of the United States District Court of the Eastern District of Pennsylvania."

The purchase contract between Ms. Ellison-Acosta and Wentworth which is now before the court specifies that in return for an immediate payment of $22,000 to Ms. Ellison-Acosta, Wentworth will receive the following assigned payments totaling $50,000 from the annuity issued by Pacific Life for Ms. Ellison-Acosta's benefit:

$25,000.00, payable on August 7, 2028; and
$25,000.00, payable on August 7, 2031.

It is undisputed that Ms. Ellison-Acosta would in effect be paying interest at the rate of 23.92% per year. According to her affidavit filed with the pending motion, she would use the proceeds to pay overdue rent, to help pay for a reliable used car, and to enroll in college classes.

III

The court's December 14, 2023 Order requires the court's imprimatur on any change in the structured settlement:

IT IS FURTHER ORDERED that the rights to receive periodic payments granted to the minor Plaintiff in this Order may not be sold, transferred, hypothecated, pledged, or otherwise alienated in any manner, directly or indirectly, without the prior approval of this Court.  Any purported or attempted sale, transfer, hypothecation, pledge, or other alienation of such payment rights that

has not been so approved will be a direct violation of this Order.

The Order is consistent with a Pennsylvania statute known as the Structural Settlement Protection Act, 40 P.S. §§ 4001-4009.  It provides that no transfer or assignment of structural settlement payment rights shall be effective unless approved by a court of competent jurisdiction.  40 P.S. § 4003(a).  Among other provisions, the statute requires the transferee to disclose in detail to the payee, that is the beneficiary of the structured settlement, what he or she will receive and exactly what it will be costing the payee in interest by agreeing to the transfer.  See 40 P.S. § 4003(a)(2). Significantly, it must be established "that the transfer is in the best interest of the payee or his dependents."  40 P.S. § 4003(a)(3).  In addition, "if the transfer would contravene the terms of the structural settlement," payee must show that "the transfer has been expressly approved in writing by . . . any court . . . that previously approved the structured settlement."  40 P.S. § 4003(5)(1)(B).

The motion represents that a petition for partial transfer of the structured settlement has also been filed in the Court of Common Pleas of Delaware County, the county where Ms. Ellison-Acosta is domiciled.  The motion correctly notes that before the state court may consider the matter Ms. Ellison-

-4-

Acosta must first show that this court has approved the proposed transfer.

IV

The court held an evidentiary hearing on February 9, 2026, and on March 18, 2026 to consider whether the purchase contract between Ms. Ellison-Acosta and Wentworth is in her best interest.

Ms. Ellison-Acosta lives in an apartment in Drexel Hill.  She had testified on February 9 that she needed money to pay her overdue rent.  At the March 18 hearing, she advised the court that her monthly rent of $1,225 is no longer an issue.  Instead, she now lacks funds for her gas and electric bills which average up to $200 per month.  She is currently almost $1,000 in arrears.

She also seeks the money to buy a car.  She works at a Shop Rite in Drexel Hill and takes an Uber or Lyft to and from work.  The rides cost her up to $150 per week, depending on traffic and the weather.  She conceded that bus transportation was available between her home and her work.

Ms. Ellison-Acosta nets approximately $1,200 per month from her job at Shop Rite and in addition receives a monthly check of $1,373 as a result of the structured settlement approved by the court for a total monthly income of $2,573.  Her monthly rent of $1,225, plus $200 for utilities, and $600 for

Uber and Lyft rides leave her with approximately $600 per month for other expenses.

She also intended to use some of the money from Wentworth to further her education at a culinary school or college, possibly at the Community College in Delaware County or in Philadelphia.  As part of the settlement of this action, $100,000 was deposited for her benefit into an account with the Pennsylvania 529 Investment Plan to be used for her education. This account is administered by the Pennsylvania Treasury Department.  Since funds from this account are available for her education, there is no need to tap into the annuity from the structured settlement for this purpose through the purchase contract with Wentworth.  It also appears that the 529 account may be used at least in part for rent if she is attending school.

As Ms. Ellison-Acosta was a minor at the time of the settlement, the ownership of the account is in the name of her mother, Brandi Acosta.  The court will order the Pennsylvania Treasury Department to transfer ownership of the account from Brandi Acosta to Ms. Ellison-Acosta, now that she has reached her majority.  This way, she will have full control over the money for her education.

The purchase contract between Ms. Ellison-Acosta and Wentworth would provide her immediately with $22,000 but in

-6-

return Wentworth would receive $25,000 on August 7, 2028 and $25,000 on August 7, 2031.  Counsel for Wentworth noted at the hearing that the present worth of these two payments is $41,739. As stated in the purchase contract, Ms. Ellison-Acosta would in effect be paying interest at the hair-raising rate of 23.92% per year.

Ms. Ellison-Acosta can save a significant sum by taking the bus to and from work rather than paying Uber and Lyft.  If she does so, her utility bills will not be an issue and her transportation concerns will be mitigated.  She can also obtain funds from her 529 account for her education and possibly for her rent.  Finally, the court notes that on August 7, 2026 she will be receiving a lump sum payment of $50,000 from the structured settlement.  She will be able to purchase a car in the coming months.

Ms. Ellison-Acosta is unsophisticated in financial matters.  The deal she made with Wentworth is extremely unfair to her.  The court finds that the motion of Wentworth for a partial transfer of the structed settlement is not in the best interest of Ms. Ellison-Acosta.  Consequently, the approval of this court of the transfer will be denied.

-7-